WIRT v. REID et al.

(Supreme Court, Appellate Division, First Department.   June 10, 1910.)

1. TRIAL (§ 344*)—VERDICT—CORRECTION.
    The rule that jurors may not impeach their verdict does not affect the power of the court to accept the evidence of jurors to perfect the verdict, and to correct any inadvertence or mistake resulting in the entry of a verdict not in accord with the finding of the jury.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 813; Dec. Dig. § 344.*]

2. COURTS (§ 116*)—RECORDS—CORRECTION—AUTHORITY OF COURT.
    The court has power over its own records, to correct mistakes and make them state correctly the facts as they existed.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 369–373; Dec. Dig. § 116.*]

3. TRIAL (§ 344*)—VERDICT—CORRECTION—AFFIDAVITS OF JURORS.
    Where a verdict is returned and entered, on a subsequent day the court may correct the record of the verdict, so as to correctly express what the jury decided, and for that purpose it may receive the evidence of the jurors as to the verdict they intended to render.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 813; Dec. Dig. § 344.*]

4. TRIAL (§ 339*)—VERDICT—POWER OF COURT.
    Where a sealed verdict has been rendered, but which, when introduced, is objected to by some of the jurors who have signed it, the court may send the jurors back to consider the verdict.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 791–794; Dec. Dig. § 339.*]

5. TRIAL (§ 340*)—VERDICT—SEVERAL ISSUES.
    Where the jury has failed to find a verdict on one or more issues sub-mitted, the court may direct the entry of the verdict on such issues, where it is clearly established by the evidence of the jurors that such a verdict was intended.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 795–799; Dec. Dig. § 340.*]

6. TRIAL (§ 342*)—VERDICT—POWER OF COURT.
    The court submitted to the jury the issues whether defendant and whether codefendant were guilty of negligence.  The jury agreed to a verdict for defendant, but did not come to an agreement on the question of codefendant's negligence, when without their request, and without any interrogation as to whether or not they had agreed as to either defend-ant, or codefendant, the officer in charge of the jury discharged them, telling them to appear in court on a certain day, and the clerk then en-tered in the minutes that the jury had disagreed.  The error was dis-covered and called to the attention of the court shortly after the court's discharge of the jury, and it was asked to recall the jury, all of whom were present.  Held, that the court should have called the jury together, and by proper inquiry ascertained the facts, and where it was satisfied that there had been no fraud or impropriety committed, and that the re-sult was a mere mistake, it should have corrected the entry in the min-utes.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 795–799; Dec. Dig. § 342.*]

7. TRIAL (§ 342*)—VERDICT—ENTRY—CORRECTION—POWER OF COURT.
    Where the court erroneously refused to correct the minute entry of the verdict of the jury, it could correct the mistake, on motion therefor, sup-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ported by the evidence of all the jurors, and thus make the record correctly state the verdict rendered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 806; Dec. Dig. § 342.*]

Dowling and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by John D. Wirt, as administrator of Ralph E. Wirt, against Daniel G. Reid and another. From an order denying a motion to correct the records and minutes of the Trial Term to conform to the actual verdict of the jury, defendant Daniel G. Reid appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

William B. Hornblower, for appellant.
Theodore F. Humphrey, for respondent Wirt.
Matthew J. Keany, for respondent Pain Mfg. Co.

INGRAHAM, P. J. This action was brought to recover for the damages caused by the death of the plaintiff's intestate. The complaint alleges that the defendant Reid, and the defendant Pain Manufacturing Company while in the employ of the defendant Reid, its servants, agents, and employés, did wrongfully and unlawfully and so carelessly, negligently, and recklessly conduct and manage an exhibition and display of fireworks as to explode, fire, and set off said fireworks; that by reason of the premises, and such carelessness, negligence, and recklessness a powerful, dangerous, and highly explosive bomb or firework set off struck the deceased while he was seated as a guest on the piazza of the house of the defendant Reid and caused his death; and that the death of the said decedent was caused by reason of the premises, and by the carelessness, negligence, and recklessness of the defendants Reid and the Pain Manufacturing Company, their agents and servants. The action thus being based upon the alleged contributing negligence of both defendants, there could be a recovery against both only upon a finding by the jury that each defendant was negligent and that his negligence was the proximate cause of the accident which resulted in the death of the decedent. The case came on for trial at Trial Term before a jury, and the court submitted to the jury the question of the defendants' negligence in the display of fireworks. The court charged that the plaintiff was bound to establish the act of negligence upon which he relied; in other words, that some person or persons who owed a duty to the deceased failed to perform that duty, and that such failure was the sole proximate cause of the accident; that it was incumbent upon the defendant Reid to take the precautions of an ordinarily prudent and careful man, namely, to be careful in the procuring of the fireworks and the selection of an operator; that Reid claimed that he made a contract with the defendant Pain Manufacturing Company, and was prudent and careful in selecting them; that if there was negligence it was the negligence of some persons other than himself, or persons for whose acts or omissions he was not responsible; that if the damage was caused by the sole neg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ligence of one or the other of these defendants, and the jury was unable to determine which is liable the plaintiff's case falls; that if Reid made a contract with the Pain Company, and that there was a negligent act which caused the injury without any interference or direction on the part of Reid or his servants, the defendant Reid would not be responsible.

Upon this charge the case was submitted to the jury, and a sealed verdict ordered on Friday, November 19, 1909. At about half past 5 o'clock on that afternoon, the jury not having returned to court with its verdict, it was announced by an officer of the court that the court had ordered a sealed verdict to be returned on Monday morning, November 22d, at the opening of the court, and shortly thereafter the jurors were discharged as not having agreed upon a verdict. On Monday morning, November 22, 1909, counsel for all the parties appeared in court, the court was opened by the justice holding the term, all the jurors who had been impaneled in this case being present, and it was announced by the clerk that the jury had disagreed. Shortly afterwards one of the jurors stated to the counsel for the defendant Reid that the jury had in fact agreed to a verdict in favor of the defendant Reid, and had disagreed as to the liability of the other defendant, the Pain Manufacturing Company. Counsel for the defendant Reid thereupon stated to the court that he understood that the jury had found a verdict in favor of the defendant Reid, but had disagreed in regard to the defendant Pain Manufacturing Company, and asked to have the jury recalled, stating that the jury were all present. To this counsel for the plaintiff and the Pain Company objected, when the court stated that the manner of rendering a sealed verdict is by rendering a verdict in a sealed envelope, that no verdict had been rendered for this defendant, and refused the application. The defendant Reid then obtained the affidavit of each of the 12 jurors, from which it appeared that the jury retired into the jury room for deliberation at about 1 o'clock on November 19th; that all the jurors promptly and unanimously agreed that no negligence on the part of the defendant Reid was shown by the evidence, and that a verdict should be rendered in favor of the said Reid; that as to the defendant the Pain Manufacturing Company the jury could not agree upon a verdict; that about 5:30 o'clock on the afternoon of November 19th, while the jury were still deliberating as to the defendant the Pain Manufacturing Company, the foreman was asked by an officer of the court as to whether the jury had agreed upon a verdict, to which the foreman replied that they had not yet agreed, meaning and intending thereby that they had not agreed upon a verdict in regard to the Pain Manufacturing Company, and inadvertently omitted to report the verdict of the jury in favor of the defendant Reid; that the said officer of the court then withdrew from the jury room, and in about five minutes returned and said that they could go home and report to the court on Monday; that all the jurors attended on Monday at the court ready to render said report and verdict of the jury; that the conclusion of the jury as recorded by the clerk and reported by the court, to wit, that the jury disagreed, was erroneous, and does not truly record or report the conclusion of

the said jury; that said record and report is true only as to the defendant the Pain Company, and not as to the defendant Reid. Upon these affidavits the defendant Reid made a motion before the Trial Term of the court at the same term that the record and minutes of the clerk of the court be amended to conform to the actual finding and conclusion of the jury before whom such action was tried, so that said record and minutes should include and set forth a verdict in favor of the defendant Reid. This motion was heard by the court at which the case was tried, and after hearing counsel for the defendant Reid for the motion, and for the defendant the Pain Manufacturing Company and for the plaintiff in opposition to the motion, that motion was denied, and from the order denying it the defendant Reid appeals.

There is this established by the affidavit of each of the jurors, as well as by the other evidence submitted, without the slightest dispute: That the jury had actually agreed to a verdict in favor of the defendant Reid, and were ready to report such verdict to the court. That the officer in charge of the jury had discharged the jury from further attendance on Friday, November 19th, with instructions to report again to the court on Monday, November 22d, when they all reported and were present in court ready to render such a verdict as they had agreed upon. The discharge of the jury after the adjournment of court on the evening of November 19th was caused by the inadvertence or mistake of the foreman of the jury in communicating to the officer a disagreement, when the fact was the jury had agreed in favor of the defendant Reid. There is thus presented a question as to the power of the court under the circumstances disclosed, and, if the court had then the power to call the jury together, so that their verdict could be properly received and recorded, whether it was its duty under the circumstances here presented to receive the verdict of the jury, and, if the court then refused to call the jury together and receive its verdict, whether there is any relief that can be granted upon appeal.

The case had been fully tried, and the jury had agreed upon a verdict. Of that, upon this record, there is no possible question. There was no suspicion of tampering with the jury, or that it is sought by any improper means to obtain a verdict of the jury which was not the result of the free and conscientious exercise of its duty. The case presented is where, after a protracted and carefully conducted trial, a jury had found a verdict which it was its duty to report to the court, but where in consequence of mistake, inadvertence, or a lack of familiarity with the duty of jurors, such verdict was not reported, and a litigant is to be deprived of the benefit of the verdict in his favor.

Trial by jury, as established under the English common law, has been regarded for centuries as essential to the preservation and protection of the people who have inherited the common law of England. To protect this right to trial by jury, and to enforce and protect the advantages derived therefrom, courts have established most careful rules to prevent any abuse tending to render such protection incomplete. Thus it was early established that the evidence of jurors could never be received to attack or overthrow the verdict. Early in England it was, however, held that this rule did not affect the power of

the court to accept the evidence of jurors to perfect the verdict, nor to correct any inadvertence or mistake that had occasioned the entry of a verdict which was not in accord with the finding of the jury. In Cogan v. Ebden, 1 Burr. 383, two issues were joined, and the foreman erroneously reported a general verdict for the defendant upon both issues, when upon one of the issues eight jurors were for the plaintiff. After the jury were discharged, these eight jurors made affidavit that it was the meaning and intention of the whole jury to find one issue for the defendant and one for the plaintiff; that the mistake was discovered by them an hour after the jury had reported and been discharged, but not until the judge had gone to his lodgings. The other four jurors refused to make an affidavit; the foreman stating that he declined because he should make himself appear a fool to the court. In the report it is stated that the court was clear that this was a mistake arising from the jury being unacquainted with business of this nature, and that it was agreeable to right and justice that the mistake should be rectified. It seems to have been recognized in that case that the court had power to order a verdict for one party upon the evidence of jurymen, when such a verdict had been agreed upon, although it was exactly contrary to the verdict that was actually returned by the foreman. And this case seems to state the law of England which has been adopted in this state.

In Jackson v. Dickenson, 15 Johns. 309, 8 Am. Dec. 236, which was an action of ejectment, certain questions of fact had been submitted to the jury, who found a verdict for the plaintiff. The defendant moved for a new trial on the ground that the verdict of the jury had been incorrectly taken, and five jurors on the trial swore that the only issue that they passed upon was one of usury. Upon these affidavits being brought before the court it was stated that:

"From the facts stated by the jurors as to what took place in delivering in their verdict, it would seem not to have been as entered by the clerk at the circuit. What the jurors have deposed must be noticed by the court, because their affidavits are not as to what transpired while deliberating on their verdict, but as to what took place in open court in returning their verdict, and shows that the clerk made a mistake in entering, or the court in directing, a different verdict. The information afforded by the affidavits of the jurors is not to impeach, but to support, the verdict really given by them. This mistake, then, is manifest."

In Sargent v. ———, 5 Cow. 106, affidavits of jurors were introduced which tended to show a misconception of the rule of damages, as derived from the charge of the judge, taken in connection with the argument of counsel; that, if they acted upon that, their error was one into which they were led by the court, which was in the nature of a misdirection; that the fact that they were misled can be derived from the nature of the source, rather than from the jurors themselves; that as the affidavits imputed no impropriety of conduct to the jurors, nor contradicted the verdict as recorded, the affidavits should be received.

In Douglass v. Tousey, 2 Wend. 352, 20 Am. Dec. 616, a jury were directed to bring in a sealed verdict. Such a verdict was presented; but when the jury were polled, on coming into court, one of the jurors refused to agree with it, saying that he was unwell, and unable to sit up all night, and therefore signed the verdict. The judge sent the

jury out again, and they finally brought in the same verdict which they had signed and sealed the evening before; the juror who had dissented from the sealed verdict saying that he had received such explanation of the verdict from his fellows that he was satisfied with the verdict. The court refused to set the verdict aside, approving the statement of the Chief Judge in People v. Douglass, 4 Cow. 26, 15 Am. Dec. 332, that:

"In a civil suit, at this day; it is perfectly clear that a separation of the jury, without, and even contrary to, the direction of the court, would not of itself, warrant us in setting aside their verdict."

These cases are cited to show the principle followed by the trial courts before the adoption of the Code of Civil Procedure in their supervision over verdicts of a jury, that there was nothing sacred in the announcement by the jury of their verdict or the entry of that verdict in the minutes of the court, but in the absence of all proof of improper conduct by the jury the court, even after the verdict had been entered and the jury discharged, would receive the evidence of jurors to establish what their verdict really was, and from that evidence would correct mistakes and enter a verdict which would conform to that actually agreed upon by the jury.

Coming down to cases subsequent to the adoption of the Code of Civil Procedure, the same principle was applied. Thus in Burhans v. Tibbits, 7 How. Prac. 21, there were two questions at issue. On the trial the judge directed the jury to find in favor of the defendant, and the other question was submitted to the jury, who rendered a general verdict for the plaintiff. The court allowed the jury to state upon which of the issues they found their verdict, and they responded that it was upon the issues submitted to them, and such a verdict was entered. There was nothing in the record showing that the issue upon the first question, which the court had directed the jury to find in favor of the defendant, was disposed of, whereupon the court subsequently, upon the application of the defendant's counsel, the plaintiff's counsel being present and objecting, the verdict was amended so that it read that the jury found a verdict for the defendant upon the first issue. The plaintiff thereupon moved to set aside the entry of this amended verdict made at the circuit. In a careful opinion, after discussing both the English and New York cases, it was held that the court had power to amend the verdict so as to make it conform to the actual facts. In that case there had been no actual verdict rendered upon one issue that was involved in the case, and the jury had been separated and discharged. It is true there had been a verdict upon the other issue, but that did not at all affect the first issue upon which the jury had been instructed to render a verdict in favor of the defendant; yet the court held, and this has never been questioned, that it had power to correct the minutes so as to make them conform to the actual fact that the jury had intended to follow the directions of the court and find upon that issue in favor of the defendant. It does not appear in that case that the affidavits of the jurors were presented to show that they had followed the directions of the court, but the court assumed that they had and that their verdict related only to the

second issue which was submitted to them. If the jury there, instead of finding a verdict for the plaintiff upon the first issue, had reported to the court that they were unable to agree upon that issue, and had been discharged, it certainly would not have been the exercise of a greater power for the court subsequently to have directed the entry in the minutes of a verdict in favor of the defendant upon the first issue, which the court had directed them to return.

No stress was laid upon the fact that a verdict upon the second issue had been rendered, and the case of Jones v. Kennedy, 11 Pick. (Mass.) 125, was cited by the court as sustaining the power to make such an amendment of the minutes. In that case the declaration contained three counts—one upon a note, another for goods sold, and a third upon an account stated. The only verdict that the jury rendered was for the plaintiff on the first count, whereupon the court directed the verdict to be amended, so as to make it a verdict for the defendant upon the other counts. What the court there said I think should be generally applied:

"Where the slightest doubt exists as to the real intention of the jury, their verdict ought not to be changed. But where no such doubt exists, it would be an unnecessary obstruction to the administration of justice to refuse such an amendment. When mistakes occur, and occur they will and do, every court will feel bound, so far as practicable without injustice to any one, to correct them. If, in this case, there had been any doubt as to what transpired on the trial, or if there had been any doubt that the whole case had been disposed of by the court and jury in the manner indicated by the amended verdict, the amendment ought not to have been allowed, or, being allowed, it should be set aside. But there is no such doubt. No one denies that the case was fully heard and entirely disposed of. The jury intended to follow the direction of the court in relation to the question of title. The only error was in omitting formally to take their verdict for the defendant upon that issue. The case is clearly within the principle by which courts, from the earliest periods of our jurisprudence, have been governed in allowing such amendments."

In Wells v. Cox, 1 Daly, 515, the jury were directed to render a sealed verdict, which they did "for the plaintiff for the full amount claimed and interest." This verdict was received and entered in the minutes as rendered without correction. Subsequently, on the affidavits of jurors that they supposed the correct amount would be inserted at the opening of court upon receipt of their verdict, the Special Term entered an order amending the verdict by inserting the amount to which the plaintiff was entitled, and directed judgment to be entered upon the verdict. Upon appeal to the General Term of the Court of Common Pleas, it was stated that there was but one issue in the action, and the verdict, therefore, covered the whole subject in controversy; that—

"the intention of the jury was to find a verdict for the amount stated by the judge, and they have so deposed. The intention being manifest, and the case upon the application to amend being clear, the court had the power to give judgment upon the substantial finding of the jury."

These being the authorities in the courts of first instance, the question as to the power of a court over jurors and their verdicts came before the Court of Appeals in Dalrymple v. Williams, 63 N. Y. 361, 20 Am. Rep. 544, which was an action for fraud against two defend-

ants.  The foreman of the jury announced as their verdict a general verdict in favor of the plaintiff against both defendants, and it was so entered.   Subsequently the defendant Williams obtained an order to show cause at a day specified during the same circuit, based upon the affidavit of all the jurors stating in substance that the verdict as agreed upon by them was in favor of the defendant Williams and against the other defendant for the amount named in the verdict entered and that the announcement of the foreman was made through mistake and inadvertence.  The court, upon a hearing under this order to show cause, directed the minutes to be amended so as to conform to the actual finding.  The General Term of the Supreme Court reversed this order correcting the minutes as entered, and the defendant Williams appealed to the Court of Appeals, which reversed the order of the General Term and affirmed the order of the Special Term amending the minutes.  Judge Allen, writing the opinion of the Court of Appeals, said that there was no doubt of the power of the court to grant the relief demanded; that—

"it would be a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by the mere mistake of the foreman of the jury in reporting to the court the result of the deliberation of himself and his fellows.  The power of a court of record over its records, and to make them truthful, is undoubted, and has been exercised without question."

And he cites with approval the opinion of Judge Harris in Burhans v. Tibbits, 7 How. Prac. 21.  The court then discussed the question as to whether the affidavits of jurors could be received to show the mistake, stating the rule as well established that courts would not receive the affidavits of jurymen to prove misconduct on their part, or any act done by them which would tend to impeach or overthrow their verdict, and stated:

"But the question is quite different when the allegation is that they have been misunderstood by the court, or erroneously reported to it, and that the entry made is not and was not their verdict.  It is not an attempt to reverse their action in the jury room, but to establish it.  It is in the nature of an attempt to correct a clerical mistake."

The court then cites Cogan v. Ebden, supra, Sargent v. ———, supra, and Jackson v. Dickenson, supra, and concludes:

"The affidavits were admissible, and they made a clear case for correcting the entry.  It would have been unjust to send the parties down to another trial, and as the defendant was not in fault there was no reason for charging him with the costs either of the motion or of the trial."

This case was followed in Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559, where a sealed verdict was ordered, which upon being presented to the court was found to simply find a verdict for the plaintiff, without stating any amount.  The court asked counsel for the plaintiff if he had any motion to make.  Plaintiff said he had none then, but would like time to consider, to which the court said in substance that he must make it then or not at all, that it was a mistrial; and counsel for the defendant then withdrew from the courtroom. Three days afterwards counsel for the plaintiff at the same term of the court procured the affidavit of all the members of the jury to the

effect that they all agreed upon a verdict for the plaintiff for the full amount claimed and interest, but, being uncertain as to the exact amount stated by the court, made out a sealed verdict for the plaintiff, which each signed, supposing that the correct amount would be inserted at the opening of court upon receipt of their verdict, and each juror said it was his intention to find a verdict for the plaintiff for the full amount stated by the court. Upon these affidavits the court granted an order to show cause why the verdict should not be amended by adding to the words the amount claimed by the plaintiff, and on the return of this order to show cause the court made the amendment asked for. Upon appeal to the Court of Appeals it was objected that the affidavits of these jurors were obtained ex parte and three days after the verdict was actually rendered, and that to grant such an amendment would be most impolitic and establish a bad precedent. In answering this question Judge Peckham says:

"In such a case of absolutely uncontradicted facts, where a certain definite, conceded amount follows a verdict for the plaintiff as certainly as night follows the day, it seems to me a mere travesty or mockery of justice to hold that no legal verdict has been arrived at, that the court is powerless to aid, and that the plaintiff must lose the benefit of the trial and the verdict actually agreed upon, and both parties must be put to the expense of proceeding de novo to a trial of the cause. Where the conceded facts are such as this case shows, I am quite certain that no bad precedent can be adduced from the court interfering to aid a verdict in regard to the meaning of which there cannot be room for two opinions."

It was further said that, even conceding that the jury have power to find a verdict for the plaintiff for less than the conceded sum due, it is also true that in such an action as this, ex contractu, the court would on application set such a verdict aside as being against or unsupported by the evidence; but where the whole jury unite in saying that they meant to and did find a verdict for the plaintiff for the full amount, and there is no hint of a denial or shadow of suspicion that this is not the absolute truth, under such a state of facts to refuse to give effect to the actual verdict of a jury, because in some other case where the facts were different, or not conceded, or contradicted, a verdict should not be amended, is to sacrifice substantial justice to the merest form or ceremony.

The principle established by these cases, applied to the case at bar, seems to me to decide the questions presented. The court has power over its record, so as to correct mistakes and make the records state correctly the facts as they existed. It has power, where a verdict is returned and entered, on a subsequent day to correct the record of the verdict, so as to correctly express just what the jury decided, and for that purpose may receive the affidavit of jurors as to the verdict that they intended to render. It has power, where a sealed verdict has been rendered, but which, when introduced, is objected to by some of the jurors who have signed it, to send the jurors back to consider the verdict. And it has power, when the jury have failed to find a verdict on one or more issues submitted to them, to direct the entry of the verdict upon such issues, where it is clearly established by the affidavits of the jurors that such a verdict was intended. Let us now apply these principles to the facts as they are here established.

There were two issues presented to the jury; one whether the defendant Reid was guilty of negligence, and one whether the defendant Pain Company was guilty of negligence. The jury promptly agreed to a verdict in favor of Reid, exonerating him from negligence. They then discussed the question as to whether the Pain Company was guilty of negligence, and had not come to an agreement upon that question, when, without their request, and without any interrogation as to whether or not they had agreed as to either defendant, the officer in charge of the jury discharged them, telling them to appear in court on the following Monday. The clerk then entered in the minutes that the jury had disagreed—a manifestly incorrect entry, which, so far as appears from the record, was made without the authority of the court; and the clerk, having made this false entry, told the jurors they were discharged. Immediately thereafter, however, from the statement of a juror to the counsel, the error was discovered, and was called to the attention of the justice presiding. It was clearly his duty then to call the jury together, and by proper inquiry ascertain whether or not a verdict had been arrived at, and if he was satisfied that there was no fraud or impropriety committed, and that the result was a mere mistake, to have corrected the erroneous entry in the minutes. This he refused to do. Counsel for the defendant in whose favor the jury had agreed upon the verdict then presented to the court at the same term the affidavit of all the jurors stating the fact, and asked that the minutes be corrected so as to correctly state the finding of the jury. That request the court refused, and I think incorrectly. Though he had made a mistake in his treatment of the case, when his attention was called to the fact, in the presence of the jury, that the entry in the clerk's minutes that the jury had disagreed as to the defendant Reid was incorrect and an error, he still had complete power over the records of the court, power to correct the mistake that was apparent upon the papers, and power to have entered the verdict to which the jury had agreed, instead of allowing the record to state the falsehood that the jury had disagreed as to the liability of the defendant Reid.

But it is said, and this is the only serious objection that is urged, that, as there had been no verdict rendered by the jury and entered in the minutes, therefore the court was without power to amend the minutes by directing that a verdict should be entered as found by the jury. But this objection seems to me obviously insufficient. It is not a verdict that the court is asked to amend by the minutes of the court. By a pure mistake, without the slightest suspicion of fraud or irregularity, the minutes falsely state a fact which is established by uncontradicted and unimpeached testimony. What is sought is, not to correct a verdict which has been rendered, but to correct an entry in the clerk's minutes, which states that the jury failed to agree as to both defendants, when in fact the jury had agreed as to one and failed to agree as to the other. It seems to me that is just what the court had in mind in Burhans v. Tibbits, 7 How. Prac. 24, a case which has been cited with approval by the Court of Appeals and this court when it directed the entry of a verdict upon an issue upon which the jury found no verdict, in accordance with what was undoubtedly the inten-

tion of the jury. In that case the verdict was not amended, because the verdict did not at all relate to the issue which had been submitted to the jury and in relation to which the court directed a verdict. It was an error in the minutes that the court corrected as to the action of the jury in relation to an issue submitted to them. As the verdict stood before it was corrected, that issue had not been passed upon, and therefore the parties were entitled to another trial upon that issue; yet the court, having ascertained that the jury actually intended to render a verdict upon that issue, directed the entry of such a verdict.

In this case the issue as against the defendant Reid had been tried and actually determined by the jury. All that was required was that that verdict should be announced to the court and correctly entered in its minutes. Here, without authority from any one, the clerk seems to have entered in the minutes that the jury had disagreed as to the liability of Reid, and when the court was called upon to correct that entry, where absolutely undisputed and unimpeached testimony established the fact that such was the verdict of the jury, it seems to me that it was its duty to have corrected the entry in the minutes, and not allow what Judge Allen, in the Dalrymple Case, supra, said would be "a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by the mere mistake of the foreman of the jury in reporting to the court the result of the deliberations of himself and his fellows." As was said by Judge Peckham in Hodgkins v. Mead, supra:

"In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure."

And to sustain the action of the court below in refusing to correct these minutes, by stating what was the actual fact, because no verdict happened to have been announced, would be a smothering of justice by an unauthorized and slavish adherence to the mere forms and technicalities of procedure.

We think, therefore, the order appealed from should be reversed, with $10 costs and disbursements, and the motion granted.

LAUGHLIN and MILLER, JJ., concur.

DOWLING, J. (dissenting). The facts upon which the application for review is made herein are substantially undisputed and are as follows: The action is one against the defendants Daniel G. Reid and the Pain Manufacturing Company to recover damages for the death of Ralph E. Wirt, deceased, through their alleged negligence. The case was duly reached for trial, and a trial was had. Under the charge of the court, the jury were substantially instructed that they could not hold both the defendants liable for the acts complained of, and were informed at length as to the conditions under which the defendant Reid could be held free from liability in the premises. The jury retired about 1 p. m., Friday, November 19, 1909, at 5 o'clock in the afternoon, no verdict having been reported, the court gave instructions for the delivery of a sealed verdict, to be returned on the following Monday at 10:15 a. m. In response to questions put by the

clerk, the jury, on four different occasions, had announced to him,' through the officer, that they did not agree, and that an agreement was an impossibility. After the court had directed the delivery of a sealed verdict, and on the receipt of a further communication that they could not agree, the clerk instructed the officer to discharge the jury, with instructions to return at the opening of court on the following Monday morning. At that time, the jurors and counsel being in the courtroom, the clerk announced the inability of the jury to agree and entered in his minutes the record of a disagreement, returning the trial fee to plaintiff's attorney. No verdict of any kind, sealed or otherwise, was signed by the jurors. Thereafter counsel for the defendant Reid called the attention of the court to the fact that he had been voluntarily informed by one of the jurors, as he was about to leave the courtroom, that the announcement was erroneous, and that as a matter of fact the jury had agreed upon a verdict in favor of the defendant Reid, and only disagreed as to the liability of his codefendant. Counsel for Reid at once stated in open court what he had been told, and, all the jurors being present in court, he moved that they be called, and assigned to their seats in the jury box, and polled. This motion was objected to by the counsel for the other parties, and was denied by the court. Thereafter, and at the same term of court, upon affidavits of each of the 12 jurors that they had agreed upon a verdict in favor of the defendant Reid, and only disagreed as to the liability of the defendant Pain Manufacturing Company, defendant Reid moved before the justice who presided at the trial for an order correcting the clerk's minutes, so as to include therein a verdict in favor of the defendant Reid, and to authorize judgment to be entered accordingly. It is from the denial of this motion that the present appeal is taken.

The question presented herein has never been before the court in this precise form. The power of the court, and its duty in a suitable case, to correct any error or omission in a verdict rendered by a jury, is undisputed. In Dalrymple v. Williams, 63 N. Y. 361, 20 Am. Rep. 544, the foreman of the jury announced a general verdict in favor of the plaintiff against both of the defendants, and it was so entered. On application, made on the same day, the judge holding circuit, an order to show cause was granted why the general verdict should not be corrected, based on the affidavits of all the jurors, showing that the verdict was, in effect, agreed upon in favor of one of the defendants as against the other for the amount named in the verdict entered, and that the announcement made through the foreman was a mistake and an inadvertence. The court in its opinion reiterated the doctrine that for reasons of public policy jurors should not be allowed to impeach their verdicts, either by showing mistakes or misconduct; nor could they properly be permitted to declare, with a view to affecting their verdict, an intent different from that actually expressed by the verdict as rendered in open court. That is, jurors cannot by affidavits prove mistake on their part, or any act done by them which would tend to impeach or overthrow their verdict. This rule would exclude affidavits to show mistake or error of the jurors in respect to the merits, or mistake in that they mistook the effect of their verdict and

intended something different. The court cited the cases holding that a verdict reported to the court cannot be impeached; but it held that quite a different question was presented where the allegation was that the jurors had been misunderstood by the court, or had erroneously reported to it a conclusion actually reached by them, by reason whereof the entry made in the clerk's minutes is not and was not their verdict. As the court said:

"It is not an attempt to reverse their action in the jury room, but to establish it. It is in the nature of an attempt to correct a clerical mistake. Had the jury rendered a sealed verdict, and their clerk or scrivener made a mistake in reducing it to writing, a correction of the writing after it had reached the court and had been entered upon the minutes would be no impeachment of the verdict, or of the integrity, intelligence, or action of the jury. The jury, in furnishing proof of the clerical mistake, would stand by their agreement and aid in giving effect to their deliberations and determinations. In the case now before us it is sought merely to prove by affidavits of the jurors that by an accident, without intentional fault, the verdict of the jury was erroneously delivered to and received by the clerk. I am unable to see in this an infringement of the rule forbidding jurors to impeach their verdicts; neither can I perceive serious danger in any practice that may grow up under such an exception to the general rule. Applications of this character will be rare, will be made before the judge presiding at the trial, and while the whole subject is fresh in the minds of all, and never will be granted, except in cases free from reasonable doubt. Something must always be trusted to the discretion of the judge. Discretion cannot be withheld in all cases because it may sometimes be abused." ·

So in Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559, where a sealed verdict had been signed and delivered by the jury, which, when opened on the following morning, was found to contain a verdict for the plaintiff with no amount specified. The court, upon affidavits of all the jurors to the effect that they had agreed upon a verdict for the plaintiff for the full amount named, with interest, and had omitted the amount, supposing that it would be inserted at the opening of the court on receipt of their verdict, amended the verdict by adding thereto the sum of $848 after the words "We find herein a verdict for the plaintiff." In that case, however, there was no question that, if the plaintiff was entitled to recover at all, he was entitled to the full amount claimed. In sustaining the action of the trial court, the Court of Appeals cited with approval Dalrymple v. Williams, and laid stress on the fact that:

"The sealed verdict, as actually handed in and signed by the jury, fixed really and beyond peradventure that status of the plaintiff, and from such verdict the fact almost follows as a legal conclusion that the amount as directed by the court was the amount found by the jury."

There are other cases in which errors have been held to have been properly corrected; but this application presents features not existent in any other to which we have been referred. At the outset, we are confronted by the fact that no verdict was ever reported to the court. A verdict at common law was the unanimous decision made by the jury and reported to the court on the matters lawfully submitted to them in the course of the trial of a cause. Bouvier. Under section 1186 of the Code of Civil Procedure verdicts are defined as either general or special. Under none of these definitions is a disagreement

a verdict. As a further proposition, it may be deemed as well established that the presence of the court is requisite to constitute a valid verdict. So in Davis v. Del. Tp., 41 N. J. Law, 55, it was held that:

"A verdict is an answer of the jury given to the court concerning matters of fact committed to them for trial."

In French v. Merrill, 27 App. Div. 612, 50 N. Y. Supp. 776, the court said:

"A verdict is a very important act. It is the culmination of the trial, and embodies the conclusions of the jury upon the questions of fact litigated on the trial. It can only be delivered to a court legally constituted to receive it. The court has important duties to discharge in connection with it."

And again:

"The only effectual and legal verdict is the public verdict, in which the jury openly declare to have found the issue for the plaintiff or for the defendants." 29 Am. & Eng. Ency. of Law (2d Ed.) 1044.

"A verdict contemplates, and necessarily involves, the presence of both court and a jury, and whenever it is directed it is absolutely necessary that both be present." Gilbert v. Finch, 72 App. Div. 38, 76 N. Y. Supp. 143.

From these considerations, it follows that when, on Friday evening, the jury were discharged without having signed a sealed verdict, and having only reported to the clerk a disagreement, a mistrial occurred.

"When a jury is discharged without a verdict, the proceeding is properly known as a mistrial." Fisk v. Henarie (C. C.) 32 Fed. 427.

This is in no way affected by the decisions holding that, after a jury have rendered a sealed verdict and been discharged, the court may still exercise supervision of them, or the jury themselves can correct their mistake. So it has been held in Rogan v. Mullins, 22 App. Div. 117, 47 N. Y. Supp. 920, that until a jury has been actually discharged they may correct or alter their verdict at their own instance or under the direction of the court.

It has been further held that the separation of the jury after handing in a sealed verdict is not such a discharge as would prevent the court from sending them out again to supply an omission to assess damages for the detention of chattels. Seidenbach v. Riley, 6 N. Y. St. Rep. 104, affirmed 111 N. Y. 560, 19 N. E. 275. The judge does not lose his power over the jury by their agreement and discharge upon sealing a verdict, but he still has power to get the correct legal verdict from them. Hatch v. Attrell, 1 N. Y. St. Rep. 497, affirmed 118 N. Y. 383, 23 N. E. 549.

It will be noticed that in all these cases a verdict had actually been announced by the jury. If, on the reassembling of court on the following Monday morning, upon the announcement by the clerk of their disagreement, the jury had protested against the announcement as a mistake and erroneous, and requested the court to allow them to deliver the conclusion actually reached as a verdict, another situation would have been presented, not without its difficulties, although it would still seem that when the discharge on Friday evening without the rendition of a verdict was had, pursuant to the instruction of the court, the mistrial was then complete, and neither court nor jury could revive the latter's extinct powers; for such cases as Warner v. N. Y.

C. R. R., 52 N. Y. 443, 11 Am. Rep. 724, hold that jurors have power over their verdict, and that their right to alter it, so as to conform to their real and unanimous intention and purpose, only applies up to the time when they have been dismissed from their relation to the case as jurors.

By the ancient common law jurors were kept together as prisoners of the court until they had agreed upon their verdict. The trials of cases lasted but a single day, and the power of the court to adjourn from day to day, in order that the jurors might have rest and refreshment, was doubted and denied; but with the increase in the number of jury trials, and their greater duration, the universal practice has grown up of allowing jurors to separate in the trial of civil cases, as well as of allowing the rendition of sealed verdicts, as a matter of convenience both for the court and jurors. There is nothing about a sealed verdict which distinguishes it from, or renders it more sacred than, an ordinary verdict. It is subject to the same corrective agencies as the latter. Every verdict may be shorn of such errors and mistakes as creep into it in course of communication from the jury to the court. But there is no authority for the conversion of no verdict into a verdict; of a disagreement into an agreement; of a mistrial into a completed trial.

While in this case it may seem that an injustice is being done to the defendant Reid, the embarrassing situation in which he finds himself of being obliged to again resist a claim which, apparently, a jury once thought he should not be called upon to pay, is due to the act of the jury itself. To authorize the creation by affidavits of a verdict after a mistrial is a proceeding fraught with danger and a step beyond anything yet authorized by law.

The order appealed from should therefore be affirmed, with $10 costs and disbursements.

McLAUGHLIN, J. The jurors never rendered a verdict. All they did was, after consultation in their room, to agree to do so, and when the officer asked them if they had agreed, they informed him they had not, and were thereupon, according to the order of the trial judge, discharged, and were again formally discharged in open court the following morning. To compel the clerk, under such circumstances, to enter in his minutes that the jury rendered a verdict in favor of the appellant, is to compel him to put into his minutes something that is not true.

I therefore concur in the opinion of Mr. Justice DOWLING.