(69 Misc. Rep. 415.)

## RIPPLEY v. FRAZER.

(Supreme Court, Special Term, Onondaga County. November, 1910.)

1. TRIAL (§ 362*)—VERDICT—IRREGULARITY—SUFFICIENCY.

Where, in an action for personal injuries, the jury were instructed to find on defendant's negligence and plaintiff's contributory negligence and the damages and to bring in a sealed verdict, and they announce that they have found on the first and second questions only and not on the third, and the court, thinking they had failed to agree, discharges them, but, on learning that they had found for defendant on the question of contributory negligence, causes them to subscribe proper answers to the question submitted, the verdict should stand.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 865–868; Dec. Dig. § 362.*]

---

2. TRIAL (§ 362*)—VERDICT—AMENDMENT—EFFECT.

Where the court in a personal injury action discharges the jury, thinking that they had failed to agree, but immediately, on learning that they had found for defendant on the question of contributory negligence, recalls them, neither the fact of a casual conversation between one juror and defendant's attorney in the meantime not open to suspicion nor a formal discharge of the jury will vitiate their verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 867; Dec. Dig. § 362.*]

Action by Clarence L. Rippley against Frederick Frazer. Verdict for defendant. Motion for new trial denied.

J. David Enright, for plaintiff.
Olmsted & Van Bergen, for defendant.

ANDREWS, J. The facts upon which this motion is based are undisputed.

The action was brought to recover damages for personal injuries suffered by the plaintiff by reason of the alleged negligence of the defendant. At the close of the evidence a motion was made for a nonsuit. Decision upon this motion was reserved, and the court submitted to the jury three questions for their consideration: (1) Was the defendant guilty of negligence which caused the injury to the plaintiff? (2) Was the plaintiff guilty of contributory negligence? (3) What damages were caused to the plaintiff by the accident complained of?

The case was finally submitted to the jury on the afternoon of Wednesday, October 19, 1910, and they were directed to answer these questions in writing and to bring in a sealed verdict at the opening of court on October 20th. They were further told that, in case they answered either of the first two questions in favor of the defendant, they need not answer the third. The court directed the officer in charge of the jury to discharge them, if they had not agreed upon their verdict by 10 o'clock on the evening of October 19th. The jury reported to the officer at that time that they had not agreed, and thereupon they were discharged and were permitted to separate. The next morning, prior to the opening of court, the foreman of the jury met casually the attorney for the defendant and said to him:

"That he was all right, that he liked the way that he tried the case, and that he was sorry that the jury had disagreed."

And the attorney answered that he had tried to do the best he could. The foreman of the jury has also stated that, prior to the opening of court, he talked with several parties about the case. Upon the opening of court on the morning of October 20th, the jury were present in their seats. Their names were called, and they were asked if they had agreed upon a verdict. The foreman replied that they had anwered the first two questions and not the last one. Thereupon the court discharged the jury. Immediately thereafter the foreman of the jury approached the bench and asked permission of the court to be excused from service for that afternoon. After permission was given him, he asked the trial judge whether, if the jury had

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

found in favor of the defendant on either one of the first two questions, it was necessary for the jury to decide the third. The trial judge replied, "Did you do that?" and immediately directed the jury to return to the jury box. This being done, the court announced that it would examine the verdict and told the jury that it would take their verdict and see what it was. Thereupon the foreman replied that they had not prepared a sealed verdict, because they had not agreed upon the last question. The court then directed them to retire and bring in a verdict upon the two questions upon which they did agree. They did so retire and shortly returned and presented to the court their answers in writing, properly signed, to the first two questions, finding that the defendant was guilty of negligence which caused the injuries to the plaintiff; and, also, that the plaintiff himself was guilty of contributory negligence. The jury were then polled as to the second question, and each answered that the plaintiff was guilty of contributory negligence. It appears, further, that, during their deliberations on the evening of October 19th, the jury unanimously voted by ballot in favor of the plaintiff with regard to the first question submitted to them. With regard to the second question, after several ballots, the vote stood 11 to 1 in favor of the defendant. Thereupon the dissenting juror announced that upon this question he would agree with the others. They then, misunderstanding the direction of the court, considered the third question; and, upon this question, they entirely failed to agree. No answers in writing to the first two questions were prepared or signed by the jury until after they were sent out by the court on the morning of October 20th, with the direction to answer these two questions. Proper objections and exceptions were taken, both by the plaintiff and the defendant, to the action of the court on the morning of October 20th. Under these circumstances, the question to be determined is whether the verdict finally announced by the jury may stand and judgment be directed thereon.

The plaintiff claims: That a mistrial resulted. That the court had no power to direct the jury again to retire, because: (1) They had separated on the night of October 19th, without finding a sealed verdict. (2) The foreman conversed with the attorney for the defendant. (3) The foreman conversed privately with the trial judge. (4) The jury were discharged on the night of October 19th, and again by the court on the morning of October 20th.

The fact that the jury separated on the night of October 19th, before they had prepared and signed their verdict as they were instructed to do, where there is, as in this case, no evidence or suspicion of abuse, is immaterial. Upon this fact coming to the attention of the court, they may be required to retire and do what they should have done in the first instance. Douglass v. Tousey, 2 Wend. 352, 20 Am. Dec. 616; People v. Douglass, 4 Cow. 26, 15 Am. Dec. 332; Bunn v. Hoyt, 3 Johns. 255; Root v. Sherwood, 6 Johns. 68, 5 Am. Dec. 191; Oliver v. Trustees, 5 Cow. 283; Seidenbach v. Riley, 6 N. Y. St. Rep. 104; Lyon v. Brown, 34 App. Div. 323, 54 N. Y. Supp. 315; Hatch v. Attrill, 118 N. Y. 383, 23 N. E. 549.

That this should be the rule is essential, if the practice of receiving

sealed verdicts is to be permitted. For, as has been said by the Court of Appeals:

"No verdict is of any force but a public verdict, given in open court; until that is received and recorded there is no verdict. When the jury comes to the bar to deliver their verdict, all or any of them have a right to dissent from a verdict to which they have previously agreed. A verdict is not recognized as valid and final until it is pronounced and recorded in open court; the jury may change their mind and disagree to their verdict after they have pronounced it in open court before it is received and entered on the minutes. After a verdict is rendered or announced and before it is entered, the jury may be examined by the poll, if the court please, and either of them may disagree to the verdict. * * * The object of polling a jury is to ascertain if the verdict which has just been presented or announced by the foreman is their verdict, or, in other words, if they still agree to it." Labar v. Koplin, 4 N. Y. 547.

To the same effect are Fox v. Smith, 3 Cow. 23; Blackley v. Sheldon, 7 Johns. 32; Weeks v. Hart, 24 Hun, 181; Warner v. N. Y. C. R. R. Co., 52 N. Y. 437, 11 Am. Rep. 724; Bunn v. Hoyt, supra; and Root v. Sherwood, supra. If, therefore, whether the verdict be sealed or open, one or all the jury may change their minds until it is received and recorded, the object of accepting sealed verdicts fails, unless the fact of separation is disregarded.

The merely casual conversation of the attorney for the defendant with the juror was harmless. There is no suspicion that any influence with regard to the case was exerted or sought to be exerted. The mere fact that an attorney may have exchanged words with a trial juror is not enough to vitiate a subsequent verdict. If there is the slightest doubt or the slightest question as to the innocence of the transaction, no verdict can stand. But, where there is none, it would be carrying to an extreme rules made for the protection of the jury to hold that, under such circumstances any verdict must be set aside.

Much of the same thing may be said as to the conversation of the juror and the trial judge. Ordinarily his sense of propriety will prevent any private communication between him and the jurors—certainly with regard to the case. But where, supposing the deliberations of the jury over, he talks with the juror of other matters, and then the juror by a question leads him to suspect that a mistake has been made, it would seem proper that such mistake should be corrected.

By far the most serious question arises because of the discharge of the jury. While they were said to have been discharged on the night of October 19th, this is perhaps not a strictly correct use of the word. They were permitted to separate, but they were required to appear as a body in court the next morning and report as to their action. They were still a jury in the case. But this is unimportant, for they were certainly discharged by the trial judge the next morning when they announced that they had not agreed. And this was not a mere slip of the tongue. It was a deliberate act of the judge, believing, as he did, in view of his charge, that the jury had answered the first two questions submitted to them in favor of the plaintiff and had been unable to agree as to the amount of damages.

By that discharge were their duties ended? Had they lost all juris-

diction of the case? Had they any more right then to go out to consider and to find a verdict than would have had 12 strangers? For, clearly, they were sent out to find a verdict. They were not bound by their action of the night before. If they chose, they could have reported one in favor of the plaintiff.

There can be but little doubt that, under the circumstances developed in this case, even after their discharge, a motion might have been made to correct the record so that it might state correctly that the jury had answered the second question submitted to them in favor of the defendant. Cogan v. Ebden, 1 Burr. 383; Jackson v. Dickenson, 15 Johns. 309, 8 Am. Dec. 236; Wells v. Cox, 1 Daly, 515; French v. Merrill, 27 App. Div. 612, 50 N. Y. Supp. 776; Hodgkins v. Mead, 119 N. Y. 166, 23 N. E. 559; Dalrymple v. Williams, 63 N. Y. 361, 20 Am. Rep. 544; Wirt v. Reid, 138 App. Div. 760, 123 N. Y. Supp. 706. These authorities seem decisive upon this point, although there may be a logical inconsistency between them and the line of cases represented by Labar v. Koplin. For if one or all of the jury may change their minds until the verdict is announced and recorded; if the determination reached by the jury in their room is not final and binding; if either party, on their return to the courtroom, and whether their verdict is oral or sealed, may demand a poll as to whether they are still of the same mind—it is difficult to see how, in their absence, when no such opportunity for change is given, their incomplete action can be made complete by an order of the court. But the question is not open to argument.

I have found, however, no case holding that, after the jury has been formally discharged by the court, it may be reconvened and permitted then to render a verdict. In Wirt v. Reid, cited above, such practice seems to be approved; but it was not necessary to the decision. In this state some phrases may be found bearing on the subject:

"The matter of further consideration was subject to his (the court's) control, until the jury were finally discharged. * * * It has always been held that a verdict might be reconsidered and corrected while the matter was still sub judice and before the final discharge of the jury. * * * The power of the jury over their verdict does not cease until their dismissal." Rogan v. Mullins, 22 App. Div. 117, 47 N. Y. Supp. 920.

"Until a jury is actually discharged, they may correct or alter their verdict, either at their own instance or that of the court." Salemon v. N. Y. C. R. R. Co., 56 Misc. Rep. 502, 107 N. Y. Supp. 58.

"The jury was dismissed and became no more a jury in the case. After a verdict has been received and entered upon the minutes and the jury has been dismissed, they have not the power to be reassembled and alter their verdict." Warner v. N. Y. C. R. R. Co., 52 N. Y. 437, 11 Am. Rep. 724.

In Ward v. Bailey, 23 Me. 316, the court speaks of a correction of a verdict where the jury have not separated or left their seats.

In Sargent v. State, 11 Ohio, 472, it is said that, after a jury have returned their verdict, have been discharged, and have separated, they cannot be recalled to alter or amend it.

And yet to hold that, where the trial judge has announced that the jury is discharged and immediately thereafter recalls them to the box, before any formal record of their action or that of the court is made (Warner v. N. Y. C. R. R. Co., 52 N. Y. 437, 11 Am. Rep. 724), their

power to render or correct a verdict is gone, yet that the court on affidavits has the power to do this very thing would seem to make an unnecessary distinction. In the one case the locus pœnitentiæ is given to the jury. It is absent in the other. In the one case the jury may be polled. Not so in the other. And if, as is said in Ward v. Bailey, cited above, "it would be manifestly unsafe, after such an opportunity for foul practices, to allow a jury to alter a verdict," what is to be said of the danger of allowing sealed verdicts, where, after separation, sometimes lasting many hours, the jury has still clearly the power to change or amend their verdict.

It is a matter which should be left to the discretion of the trial judge. If he believes not that there have been foul practices, but that there is an opportunity for fair suspicion that they might have occurred, he will not permit the jury to reassemble. If for any reason he thinks it unwise to permit it, he will refuse to allow it. But if at the close of a trial it appears that a mistake has been made; if there is no suspicion that the jury have been tampered with; if no long time has elapsed—then he may permit them to reassemble and correct their error, even if he may have stated to them that they are discharged. "It would be a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by a mere mistake of the foreman of the jury in reporting to the court the result of the deliberations of himself and his fellows" (Dalrymple v. Williams, 63 N. Y. 361, 20 Am. Rep. 544); or by the mere mistake of the trial judge in discharging them because misled by such mistake of the foreman.

Motion denied.