HEDY SPIELTER, Respondent, *v.* NORTH GERMAN LLOYD STEAMSHIP COMPANY, Appellant.

First Department, April 10, 1931.

*James F. Donnelly* of counsel [*Alfred W. Andrews*, attorney], for the appellant.

*Theodore Arnold*, for the respondent.

MERRELL, J. Plaintiff moved, at the Trial Term at which the action was tried and on the day following the rendition of the verdict, to vacate and set aside said verdict upon three grounds:

"*First.* One, Milton K. Herzog, juror number 12, when examined as to his qualifications prior to being sworn in as such juror, failed to disclose the fact that he had been an investigator and adjuster of claims for upwards of twenty years.

"*Second.* The conduct and threats employed by said juror, Milton K. Herzog, after the jury had retired to consider the verdict, rendered impossible a careful consideration of the evidence, and resulted in the verdict for the defendant contrary to the honest convictions of a number of the jurors.

"*Third.* Prior to the opening of the sealed verdict herein, its acceptance by the Court, and its being read into the record, one of the jurors, in behalf of himself and in behalf of several other jurors, unsuccessfully sought to call the attention of the Court that the said verdict did not express their conscientious views, and that they desired to change the said verdict. The said verdict as accepted and read into the record was, therefore, not the unanimous verdict of the entire jury."

In support of the first two grounds upon which plaintiff moved to vacate and set aside the verdict, plaintiff furnished the affidavit of her attorney and trial counsel, showing how juror No. 12, who had for twenty years been engaged as an investigator and claim adjuster and, concealing such previous employment, had been accepted as a juror by plaintiff, and an affidavit of one Maurice Bierman, who served as juror No. 5 at the trial. In the last-mentioned affidavit, Juror Bierman stated that the jury originally had stood eight for the plaintiff and four for the defendant, and further stated: "Juror number 12 was a large heavy set man whose name, as I am informed, is Milton K. Herzog. Immediately

upon the taking of the said vote, said juror number 12 stated to the other jurors ' We may as well understand right here and now that there has got to be a verdict for the defendant here.' Some of the jurors including myself remonstrated with him, and attempted to point out to him wherein the evidence in this case showed that the defendant had been negligent in failing to have guarded against the accident which resulted in the serious injuries to the plaintiff, but said Herzog stated: ' Nothing that you can say can help. We have got to find a verdict for the defendant. I have been an investigator and adjuster for shipping companies for over twenty years, and I know all about these cases. You may as well make up your minds to find a verdict for the defendant. If necessary, we will sit here for three days and three nights until you do so.'

" The other members of the jury tried to discuss the evidence and reach a verdict in accordance therewith. Calm and deliberate discussion was rendered impossible by the belligerent talk and attitude of said juror Herzog. He continued to insist that there was no use discussing the case because it would do no good, and that we would have to bring in a verdict for the defendant. I then told the foreman that under the circumstances no purpose would be served by continuing the session, and asked that he send word to Judge Gavegan as to the situation. This the foreman refused to do. We remained in the jury room altogether about two hours. During that time, several votes were taken, and the jurors who had voted for the plaintiff, gradually yielded to the domineering and bull-dozing methods of said juror Herzog. I was the last to finally consent to a verdict for the defendant. A sealed verdict having been ordered, all of the jurors signed their names to the form presented to us, and we then left the jury room."

In support of plaintiff's motion there was also furnished the joint affidavit of four others, David Piesman, Julius Lesser, Benjamin Stein and David Cohn, all of whom had served as members of said jury, and in which affidavit the affiants confirmed and corroborated the affidavit of Juror Bierman as to the coercive conduct and methods adopted by Juror Herzog during the deliberations of the jury.

In our opinion ample grounds existed for vacating the verdict upon either of the first two grounds upon which plaintiff moved. The subterfuge and concealment of circumstances clearly disqualifying the juror from an impartial consideration of the issues, and the strong-arm methods which the juror adopted to coerce his fellow-jurymen to agree to his preconceived determination to secure a verdict for the defendant corporation regardless of the evidence, would seem to have amply justified vacating a verdict

thus obtained. The court, however, granted plaintiff's motion solely upon the third ground, namely, that prior to the opening of the sealed verdict herein, its acceptance by the court, and its being read into the record, one of the jurors, in behalf of himself and in behalf of several other jurors, unsuccessfully sought to call to the attention of the court that the said verdict did not express their conscientious views and that they desired to change said verdict; that the verdict as accepted and read into the record was, therefore, not the unanimous verdict of the entire jury.

Plaintiff, a concert pianist, was homeward bound on one of defendant's steamships after completion of a two and one-half years' course of study in France. Plaintiff sustained injuries by being precipitated down a flight of stairs, as she alleges, because of the negligence of the defendant steamship company. The action was tried before the court and a jury on December 8, 9 and 10, 1930. After the jury had retired, the court ordered a sealed verdict. On the morning of December 11, 1930, the sealed verdict was opened and read. The verdict was in favor of defendant and was entered in the minutes of the court. On the morning of December 11, 1930, after court had convened, but *before the sealed verdict was either opened or read into the record,* five of the twelve jurors who had served at the trial reconsidered their views as expressed in said sealed verdict and appointed one of their number, Juror Maurice Bierman, to inform the justice presiding at the trial of their wish to recall their finding in favor of defendant. At that time the trial justice was upon the bench and engaged in disposing of the calendar of the court and in allotting the trial of various actions to different parts of the trial court. Juror Bierman, in his affidavit in support of plaintiff's motion to vacate the verdict, stated: "I could not interrupt him [the trial justice] and, indeed, did not think it proper for me to approach him directly." The juror thereupon spoke to one of the court officers and expressed his desire to speak to the justice. The court officer made known to the justice the juror's desire, and returning told Juror Bierman that the judge would speak to him shortly. Before doing so, however, the jurors were reassembled in their respective seats in the jury box, the sealed envelope containing the verdict was opened, and the verdict read into the record. The attorney for plaintiff made the usual motion to set aside the verdict and for a new trial, which motion was denied. The affidavit of Juror Bierman as to what then transpired was as follows: "Immediately thereafter, he [the trial justice] summoned me to the bench, and told me that he understood that I wanted to speak to him. I told him I did not want the verdict for the defendant to stand; that I was convinced

the verdict was wrong, and wanted to change it, and that that was the reason I wanted to speak to him. He told me that the jury had already been dismissed, and then proceeded to take up other business of the Court."

The affidavit of the attorney for plaintiff shows that on the afternoon of the same day, Juror Bierman, having been dismissed for the day as a juror, immediately went to the office of plaintiff's attorney and laid the foregoing facts before him. His visitation to the office of plaintiff's attorney was entirely voluntary, and thereby the attorney received the first information which he had had of the desire of the said five jurors to change their verdict, and of their unsuccessful efforts to inform the court of such desire. The attorney for plaintiff at once called at the justice's chambers, accompanied by Juror Bierman. Owing to other engagements it was not until the following morning that plaintiff's attorney called at Trial Term, Part II, where the justice was presiding. At that time plaintiff's attorney was accompanied by all five dissenting jurors. They all desired to speak to the trial justice, and protest against the verdict that had been entered. He, however, deemed it inadvisable to speak to the jurors in the absence of counsel for defendant. Besides Juror Bierman the four dissenting jurors joined in an affidavit in support of the motion of the plaintiff to vacate the verdict rendered. In said joint affidavit the jurors state: " We feel strongly that a serious wrong has been done to the plaintiff in this action in the verdict as it now stands. The said verdict at the time of its acceptance by the Court did not represent our convictions in the case.

" When we spoke to Mr. Bierman prior to the opening by the Clerk of the sealed verdict, we told him that we wanted our verdict changed, and said Mr. Bierman represented us as well as himself in his efforts to call the attention of Mr. Justice Gavegan to the change that he wanted to make, and which justice demanded.

" We do not know the plaintiff, her attorney or any of the witnesses who appeared in her behalf. We are prompted in our desire to have the verdict set aside by the fact that at no time, either before or after its being read in open court, did said verdict represent our true and honest judgment of the merits of this case.

" We feel that said verdict is a miscarriage of justice; that a serious wrong has been done to the plaintiff, and that it is our duty to join in this application to have the said verdict set aside."

In support of plaintiff's motion to vacate the verdict, the affidavit of James A. White, the court officer who transmitted to the court the application of Juror Bierman for an interview made prior to the opening of the sealed verdict, was presented. In this affidavit

the court officer states that the action was on trial on December 8, 9 and 10, 1930, and that on the afternoon of December tenth the case was submitted by the court to the jury for determination; that the following morning, December 11, 1930, at about ten-thirty o'clock, and prior to the opening of the said sealed verdict, juror No. 5 in the above-entitled case approached deponent White twice in the court room and told the court officer that the said juror wished to speak to the judge. The court officer states further that he approached the justice, who was then sitting on the bench, and informed him that said juror No. 5 wished to speak to him, whereupon the justice told deponent that he would hear the juror after the verdict was in; that the sealed verdict was thereafter opened and read into the record and a motion to set aside the verdict was made, and the jurors dismissed; that immediately thereafter the court summoned juror No. 5 to the bench, and that affiant saw the judge and said juror conversing together.

In granting the motion of plaintiff, the court rendered the following short opinion: " The juror who sought the attention of the court, before the verdict was recorded or even opened, was acting for himself and other jurors in order that it might be brought out that the sealed verdict did not express their views. I am satisfied that, in the haste and confusion of the calendar, I unwittingly proceeded in a way which resulted in there being recorded a verdict which at that time did not, by far represent the unanimous conclusion of the twelve triers of fact. Otherwise either counsel or the court would have caused them to be polled and would have immediately discovered the true situation. Accordingly, in view of what happened at the time and on reading the papers which have been filed, the court on its own motion and to correct a wrong for which perhaps the court was unintentionally responsible, will set aside the verdict. An application made at Special Term in this county would be referred to me, so that the point of practice raised is of no moment. Settle order."

It seems to me, under the circumstances of this case, that the action of the justice presiding at the trial in vacating the verdict was justified. In this case the court directed a sealed verdict, but until said verdict was actually recorded and the jurors discharged, any of the jurors had the right to withdraw his consent to a verdict. A so-called sealed verdict is no more than the agreement reached by the jurors. It does not become final until it is read into the record and the jurors discharged. I know of no distinction between a sealed verdict and an oral verdict. Prior to the discharge of the jury it was the prerogative of any juror to change his mind and to challenge the verdict about to be rendered.

In *Wirt* v. *Reid* (138 App. Div. 760) it was said in a dissenting opinion by DOWLING, J.: " There is nothing about a sealed verdict which distinguishes it from or renders it more sacred than an ordinary verdict. It is subject to the same corrective agencies as the latter. Every verdict may be shorn of such errors and mistakes as creep into it in course of communication from the jury to the court."

In *Root* v. *Sherwood* (6 Johns. 69) the rights of jurors with reference to a verdict are clearly stated as follows: " The jury, when they came to the bar to deliver in their verdict, had a right to dissent from the verdict to which they had previously agreed. There is no verdict of any force but a public verdict, given openly in court; until it was received and recorded it was no verdict, and the jury had a right to alter it as they may a private verdict. The previous agreement, that the jury might seal up their verdict, did not take away from the parties the right to a public verdict, duly delivered."

·To the same effect is the decision in the case of *Duerr* v. *Consolidated Gas Co.* (104 App. Div. 465) wherein it is stated: " Although the jury had agreed upon and prepared a sealed verdict, and this verdict had been announced and entered in the minutes of the clerk, it was neither final nor conclusive if it failed to express the true conclusion at which they had arrived. It cannot be doubted that before they severed their relation as jurors to the case, their power over the verdict remained, to the extent, at least, that they had the right to alter it so that it should conform to their real intention and purpose. (*Warner* v. *N. Y. C. R. R. Co.*, 52 N. Y. 437.)

In our opinion there can be no question as to the right of any juror serving at the trial, notwithstanding the fact that such juror had agreed to the form of the sealed verdict prior to said verdict being actually recorded, to change his mind and to announce the same to the court. The verdict in this case, as recorded, was not the unanimous verdict of the jury. It did not correspond to the intention of the twelve jurors at the time the verdict was rendered. In *International Madison Bank & Trust Co.* v. *Silverman* (138 Misc. 690) an erroneous verdict in defendant's favor had been entered. Learning of such error, the court, after the jurors had been discharged, reassembled them and ascertained that they intended a contrary verdict. The court, in discussing the power of the trial justice to make the necessary correction, stated (at p. 691): " The question now under consideration is whether the verdict of no cause of action in favor of the defendant should stand as the verdict of the jury. It is undoubtedly the law that after a jury has been discharged it can no longer function as a jury (*Porret* v. *City of New York*, 252 N. Y. 208), but there is ample authority

to hold that if a jury has returned a verdict and has been discharged and later it appears that such verdict is an erroneous expression of the jury's viewpoint on the issues, then the court, on proper proof that such verdict is an erroneous one, may direct that there be entered on the minutes of the court, and put into effect, the verdict which the jury really found. (*Dalrymple* v. *Williams*, 63 N. Y. 361; *Rippley* v. *Frazer*, 69 Misc. 415; affd., 149 App. Div. 399; *Wirt* v. *Reid*, 138 id. 760, and cases therein cited and collated.)

" The following quotation from *Wirt* v. *Reid* (*supra*), ' The court has power over its record so as to correct mistakes and make the records state correctly the facts as they existed. It has power where a verdict is returned and entered on a subsequent day to correct the record of the verdict so as to correctly express just what the jury decided, and for that purpose may receive the affidavit of jurors as to the verdict that they intended to render,' shows that in case of error on the part of the jury in the expression of its verdict, the court has a right and is under the duty to prevent injustice by establishing in the records of the court the true verdict of the jury."

Unfortunately, plaintiff did not ask to have the jury polled. Had she done so, undoubtedly five of the jurors would have stated that the sealed verdict was not in accordance with their convictions. There can be no question that had any juror, upon being polled, or without being polled, announced to the court that the sealed verdict did not reflect his views, the court would have directed a mistrial of the action, and the verdict would never have been recorded that was not concurred in by the twelve jurors. The five dissenting jurors made every effort prior to the rendition of the verdict to advise the court that they did not concur in the verdict about to be announced. It is difficult to see what more could have been done by the dissenting jurors than was attempted by Juror Bierman, to whom the four other dissenting jurors had delegated the duty of apprising the court of their dissatisfaction with the verdict in favor of defendant. It does not seem to us that the rule that a juror may not impeach his verdict should apply in the case at bar. As a matter of fact, as shown by the affidavits, five of the jurors were not in accord with the verdict as rendered. It was never their verdict. Had Juror Bierman been able to inform the justice presiding at the trial, prior to the rendition of the verdict, that five of the jurors did not agree with the verdict about to be rendered, there is no question that the justice, the jury having been allowed to separate, would have directed a mistrial of the action. The affidavits show that this is no afterthought on the part of the

jurors or the result of their being approached by plaintiff or any one in her behalf. The jurors' affidavits clearly show that the verdict rendered did not reflect their views, and the affidavit of the court officer, showing the futile attempt of the five jurors to prevent the rendition of the verdict to which they had agreed, it seems to us, clearly distinguishes this case from those wherein it has been held that jurors, after the rendition of a verdict, may not be heard to impeach the verdict to which they had agreed. In this case five of the jurors, at the time the verdict was announced, were not in agreement therewith. We think this order was right, and that justice will be promoted by a retrial of the issues.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

FINCH, P. J., and McAVOY, J., concur; MARTIN and SHERMAN, JJ., dissent.

MARTIN, J. (dissenting). The plaintiff, a passenger on board the steamship *Stuttgart* owned and operated by the defendant, North German Lloyd Steamship Company, received injuries which she alleges were due to the negligence of the defendant. On the 15th day of November, 1928, an action was commenced to recover damages for said injuries, and the case was thereafter tried in Trial Term, Part II, Supreme Court, New York county. The trial continued for three days. The jury rendered a sealed verdict which was signed by each juror. The following morning the jurors returned to the jury box and counsel for both parties were present. The court opened the verdict and the clerk announced that the jury had decided in favor of the defendant. No objection or dissent from the verdict as read was expressed at that time by any of the jurors and the verdict was recorded.

Counsel for the plaintiff then made a motion to set aside the verdict on the grounds specified in section 549 of the Civil Practice Act, which motion the court denied, with the remark that had he been sitting on the jury he would have found a verdict in favor of plaintiff. The court then dismissed the jury.

Thereafter the attorney for plaintiff made a motion to set aside the verdict, returnable on December 19, 1930, in Trial Term, Part II, before the justice who had originally tried the case. The court entered an order granting the motion, setting aside the verdict and placing the case on the reserve calendar. It is from this order that the defendant appeals.

The motion to set aside the verdict, which was made after a similar motion had been denied, was supported by affidavits which set forth three grounds, as follows: (1) That juror No. 12, when

examined as to his qualifications, failed to disclose the fact that he had been an adjuster and investigator of claims; (2) that said juror No. 12 improperly influenced other jurors by his conduct and threats; and (3) that the verdict as read and recorded was not the true and unanimous verdict of the jury.

The appellant, in an affidavit submitted in opposition to the motion, raised the objection that the motion should have been made at Special Term, in pursuance of sections 549–552 of the Civil Practice Act.

The motion was supported by affidavits and was submitted on three grounds, none of which was within the purview of sections 549–551 of the Civil Practice Act. The motion must, therefore, be considered as brought under section 552.

This proceeding appears to be an attempt by an unsuccessful party to set aside a verdict by securing affidavits from jurors to impeach their verdict. In this case there was a sealed verdict, signed by each juror, including the jurors who are now attempting to repudiate their action in voting for a verdict for defendant. Juror No. 12 was the last one to sign the sealed verdict after the jurors who now say they were coerced by him had voluntarily signed the verdict.

The attorney for plaintiff appears to place the responsibility for the verdict upon the trial justice, or his own failure to challenge a juror who was engaged in a business that might affect his judgment. He sets forth in his affidavit: " Ordinarily I should have excused said Milton K. Herzog as a juror merely because of the fact that he was engaged in the shipping business, as had been stated by him. Because of the urgings of the Court, however, that the selection of jurors be completed expeditiously, I relied upon said Herzog's assurances of impartiality, and permitted him to remain on the jury."

There appears to be no merit in the statement that the juror, Milton K. Herzog, concealed anything. It appears that he stated he was engaged in the shipping business, and the attorney for plaintiff frankly states that he was impressed by that fact and that he would not ordinarily accept a man engaged in that business as a juror in a case of this character. This clearly emphasizes the fact that there was nothing concealed, that the attorney knew the nature of the juror's business and had an opportunity to challenge him if he believed the juror, because of such business, would be influenced in favor of the defendant.

It is difficult to understand how the influence of Juror Milton K. Herzog became so overpowering as to be responsible for the verdict in favor of the defendant. This confession of weakness on

the part of several jurors is highly improbable and is contradicted by several other jurors who have submitted affidavits to the effect that the verdict for defendant was reached after due deliberation and a free and full discussion of the facts by all the members of the jury, without the influence of Juror Herzog or any other juror.

Victor Manheimer, a juror, says: " There was a fair and honest discussion of all the facts in this case. We had argument and discussion and went into the case thoroughly. I deny here that there was any bulldozing or any other method of coercion used in reaching this verdict nor any violence threatened on the part of anybody. Some were for the plaintiff and finally voted for the defendant and reached their verdict freely and willingly. There was nothing unusual in reaching the verdict in this case. I signed my name to the stated verdict as did all the other jurors. This verdict was reached in fairness and finally all the jurors reached their verdict on the facts. Nobody dominated the other and each had his own say. I signed the paper for the defendant and state every other juror did so willingly."

To the same effect are the affidavits of Odilon H. Nantel, Jerome W. Davis, Edward A. Unger and Milton K. Herzog.

Edward A. Unger, one of the jurors, says: " At all times each juror discussed the case pro and con. At no time during my discussion of the case was I influenced and voted strictly on the evidence as I heard it produced in court and after I applied the law as the Judge gave it to me."

Five jurors have made affidavits denying the allegations of Jurors Maurice Bierman, David Piesman, Julius Lesser, Benjamin Stein and David Cohn.

We, therefore, have the affidavits of five jurors that the verdict was brought about by coercion. Opposed to such allegations we have the affidavits of five other jurors, Jerome W. Davis, Odilon H. Nantel, Victor Manheimer, Edward A. Unger and Milton K. Herzog, that there was nothing unusual in the discussion of the evidence or the finding of the verdict.

If verdicts are to be set aside on conflicting affidavits of jurors after they have been rendered in a case of this character, we would soon have a chaotic condition. It has so frequently been held that a verdict cannot be impeached by the affidavit of a juror, that the law seems to be well settled on that subject. This was a sealed verdict, to which were affixed the signatures of all the jurors before the verdict was finally submitted to the court.

In *People* v. *Gallagher* (75 App. Div. 39) the court said: " It seems to be well settled that affidavits of jurors, in criminal as well as civil cases, are inadmissible for the purpose of impeaching their verdict."

In *Miller* v. *Gerard* (200 App. Div. 870) the court said: " Public policy forbids the impeachment of a verdict by the affidavits of jurors. * * * No attention should be paid to these affidavits."

In *Stromblad* v. *Hanover Fire Ins. Co.* (121 Misc. 322, 328) the court said: " This rule rests upon the consideration of public policy. Every trial lawyer knows full well that it is an easy matter to find several jurors out of every twelve, who have rendered a verdict adverse to his client, who, if he talks to them and inquires how they reached such a verdict, will hide behind an excuse that they misapprehended the charge, or the evidence. If such a statement, put in the form of an affidavit, should be held sufficient ground to warrant a new trial, few, if any, verdicts would ever stand, and there would be no end to litigation. Such a rule would open a door to deals between an unscrupulous attorney and juror, and consequent perjury which it would be well nigh impossible to detect. Public policy demands the enforcement of the rule which has been so universally adopted. It was said by Lord ELLENBOROUGH in *Rex* v. *Wooller*, 2 Stark. 111: ' The danger would be infinite if an affidavit could be received from a juryman for the purpose of setting aside a verdict.' "

We are of the opinion, therefore, that it was error to set aside this verdict on the affidavits of the jurors after it had been rendered, especially in view of the fact that it was a sealed verdict, signed by all the jurors before it was submitted to the court.

The respondent seeks to bring this case within an exception to the general rule by alleging that before the verdict was entered, the jurors sought to be heard, in an effort to inform the court that it was not the unanimous verdict of the jury. We think the affidavits submitted by the jurors in opposition to the motion clearly dispose of that proposition.

The order setting aside the verdict and granting a new trial should be reversed, with ten dollars costs and disbursements, the motion denied and the verdict reinstated.

SHERMAN, J. (dissenting). After a sealed verdict, signed by each juror, had been opened, received and entered, it was set aside by the trial court upon a motion later made by plaintiff's attorney based upon affidavits including those made by a few jurors who had signed the verdict.

The vacating order states as its sole ground " that the said verdict as and when read into the record was not the true and unanimous verdict of the jury."

The action is in negligence for injuries sustained by falling down a stairway upon a ship laboring in more or less stormy weather on

the high seas. The case was submitted to the jury late in the day, and within two hours they had reached and signed a sealed verdict and dispersed. At the opening of court upon the following morning the verdict was opened, read, received and entered. Plaintiff's motion upon the minutes to set it aside under section 549 of the Civil Practice Act was denied.

Thereupon this motion was made returnable before the trial justice upon three grounds: (1) That one of the jurors failed to disclose the fact that he had been an adjuster and investigator of claims; (2) that this juror influenced the others by conduct and threats; (3) that the verdict as read and recorded was not the true and unanimous verdict of the jury.

The motion, resting as it does upon affidavits, should have been made at Special Term, as expressly provided in section 552 of the Civil Practice Act. The trial court, however, heard it and upheld it solely on the third ground.

The facts upon which the motion rested, so far as the first ground is concerned, appear in the affidavits of the attorneys. There is no claim that the juror (Herzog) did not answer truthfully every question put to him while the jury was being impanelled. He stated that he was engaged in the shipping business and had never had any dealings with the defendant and would be impartial. With this knowledge of his business plaintiff accepted him, her counsel now stating that ordinarily he should have excused him " merely because of the fact that he was engaged in the shipping business, as had been stated by him. Because of the urgings of the Court, however, that the selection of jurors be completed expeditiously, I relied upon said Herzog's assurances of impartiality, and permitted him to remain on the jury."

The juror was under no obligation to do more than answer the questions put to him. Wide latitude is given to counsel in the examination of prospective jurors and plaintiff's counsel, having examined the juror and accepted him, cannot now be heard to say, after the verdict has been rendered, that he is entitled to a new trial, because he did not reject him. Indeed the juror's affidavit shows without contradiction that he himself had volunteered the statement of his prior connection with a steamship company. To permit verdicts to be disturbed on such a ground would virtually destroy the efficacy and finality of jury trials, since few verdicts would be free from attack upon a ground of this character by a disappointed litigant.

However, the trial court did not deem this first ground a sufficient basis for the relief sought upon the motion.

The facts constituting the remaining grounds are revealed only

through affidavits of jurors setting forth what occurred during their deliberations and expressing the later state of mind of some of the jurors reached and enunciated after the verdict had been signed and after they had dispersed.

Plaintiff presents the affidavits of five jurors setting forth in general language that one of the jurors had used brow-beating methods during their deliberation. These statements are met and directly contradicted by the affidavits of five other jurors who deny these averments and who assert that the verdict as reached was the result of orderly deliberation. Who is to determine the truth of this conflict?

The vice of the situation is that the court permitted the affidavits of any jurors relating to such matters to be received and considered upon the motion. It is not surprising that such a conflict is present.

No verdict in a closely litigated case would be immune from attack if the courts are to give heed to the expressions of jurors after the verdict has been rendered. Lawyers of experience know that jurors, when interviewed after the rendition of a verdict, frequently say that they would have found the other way if they were to reconsider the matter, or that they had been misled by the emphasis placed on certain evidence or had not fully comprehended the court's charge. Rarely can a juror resist the importunities of the defeated and disappointed litigant and refrain from giving that consoling balm. A field would be opened to those who might seek by unfair or corrupt means to turn a juror from his recorded decision and utilize his change of view to nullify the verdict. Courts would be largely employed in sifting these affidavits and jury trials would result, not in decision determinative of the issues in dispute, but in creating new realms of controversy.

There is wisdom in strictly enforcing the ancient rule which forbids the impeachment of a verdict by the affidavit of a juror. The language of Lord Ellenborough in *Rex* v. *Wooller* (2 Stark. 111) is pertinent: " The danger would be infinite if an affidavit could be received from a juryman for the purpose of setting aside a verdict."

It is well settled that affidavits of jurors are inadmissible for the purpose of impeaching their verdict. (*Miller* v. *Gerard*, 200 App. Div. 870; *People* v. *Sprague*, 217 N. Y. 373, 381; *People* v. *Gallagher*, 75 App. Div. 39; *Stromblad* v. *Hanover Fire Ins. Co.*, 121 Misc. 322.)

If the affidavits of the jurors be excised from the record and discarded, there is nothing upon which the order of the trial court can be based. All that remains is some proof that one juror endeavored to confer with the court in the morning before the sealed

verdict was opened, but was unable to speak to the court before entering the jury box with his fellow-jurors.

It is an unvarying practice that the clerk, after calling the roll, asks whether the jury have reached a verdict, and upon an affirmative response, the sealed verdict is opened and read. When this was being done and the jury harkened to its record, none of the jurors gave utterance to anything to indicate that the verdict which they had signed during the prior evening, and the recording of which they were then witnessing, was not their real verdict. Had plaintiff's counsel so requested, the jury might then have been polled, but he waived his rights in that respect by failing so to move. These formalities are strictly followed because they are designed for the prevention and correction of error. They must be carried out while the jury are still serving as an arm of the court. After the verdict has been so received and recorded, and the jury have been discharged, and the court, as here, has declined to disturb it upon a motion made upon the court's minutes, that verdict, so hedged about in its reception and entry, must be regarded as having settled the issue submitted to the jury for decision. No juror can then, after having been discharged from consideration of the case, be heard to impeach his verdict and cause the litigation to be reopened.

Were the rule otherwise, the effective and final disposition of controversies would be thwarted and the present vast amount of litigation occupying the time of the courts would be greatly increased. The rights of parties throughout a controversy are carefully safeguarded under our procedure. No litigant should be unduly vexed with repeated trials of the same dispute. The verdict of a jury reached upon conflicting evidence under the guidance of a full and fair charge imports finality and is not to be lightly tossed aside upon the claim of some of the jurors that they had experienced a change of view. Care must be taken that the doors be not thus opened to a flood of unending litigation.

The order appealed from should be reversed, with ten dollars costs and disbursements, the motion denied and the verdict reinstated.

Order affirmed, with ten dollars costs and disbursements.