[Crim. No. 19788. First Dist., Div. One. July 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY RAY HALL, Defendant and Appellant.

COUNSEL

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver and Donna Petre, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GRODIN, J.**—Bobby Ray Hall was convicted of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). He moved for a new trial on the ground that three jurors had voted for that conviction believing that they were making a finding of guilt only on a lesser included offense of misdemeanor assault. The issue on appeal is whether the trial court erred in denying that motion. We hold it did not, and consequently affirm.

*Factual Background*

According to evidence adduced by the prosecution, Hall met a Ms. S. at a neighborhood laundromat and accompanied her to her apartment. There he made sexual advances which she resisted, and a struggle ensued. Hall dragged Ms. S. into the bedroom, pinned her down and threatened to hurt her if she continued to scream. Ms. S. managed to free herself, and ran out of her apartment screaming.

So far as relevant here, Hall was charged with assault with intent to commit rape (Pen. Code, § 220) and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)).[1] The trial court instructed the jury as to the elements of both these offenses, and as to the lesser included offense of simple assault.

The jury retired to deliberate at 10 a.m. on May 4, 1979. At about 3 that afternoon the jury returned and through its foreman requested "a definition or clarification of assault by force in violation of 245a of the Penal Code," whereupon the court reread his previous instruction as to that charge. At defense counsel's request, the trial court also reread to the jury the definition of simple assault, and instructed the jury again that simple assault was necessarily included within the definition of assault by force in violation of section 245, subdivision (a), and that if the

---

[1]Hall was initially charged with two counts of burglary with intent to commit rape (Pen. Code, § 459), one count of rape by force or violence (Pen. Code, § 261, subd. 2), assault with intent to rape (Pen. Code, § 220), and assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)). In a first trial which commenced March 26, 1979, the jury found Hall not guilty on the burglary with intent to rape counts, but deadlocked on the remaining three counts, and the court declared a mistrial. The burglary counts on which Hall was acquitted, as well as the rape count on which the jury deadlocked in the first trial, related to another prosecutrix whom Hall allegedly encountered in a manner similar to his encounter with Ms. S. In the second trial, the jury again deadlocked as to the rape count, and it was dismissed by the court.

jury was not satisfied beyond reasonable doubt that the defendant was guilty of the charged offense it could find him guilty of such lesser offense.

Less than two hours later the jury returned and announced it had reached a verdict on two counts, which were read by the clerk. One of these found the defendant not guilty of assault with intent to commit rape, the other found him guilty "of the crime of felony, to wit, violating Section 245a of the California Penal Code, assault by force, as charged in Count V of the Information." The court inquired whether these represented the unanimous verdicts of the jury as to each of those counts, and invited any juror who did not vote for either verdict to raise his hand. No juror so indicated, and both counsel waived polling of the jury as to both verdicts.

On June 5, 1979, Hall's counsel moved for a new trial "pursuant to Penal Code section 1181" on the ground that "three jurors believed that they were making a finding of guilt on violation of a lesser included offense of violation of Section 240 of the California Penal Code." Accompanying the motion was a declaration from Hall's counsel which stated in relevant part: "[O]n...May 7, 1979, after the jury was discharged by the Court, I had occasion to speak to some of the jurors in the hallway of the Hall of Justice. During the course of the conversation, I learned that two jurors there, did not realize that they convicted the defendant of violating Section 245(a) of the Penal Code, a felony, but that they thought they had convicted him of simple assault, a violation of Section 240.... [¶] On May 9, 1979, I personally called jurors Cecila Ubungen, Linda Larkin, Lela McClain, and James Vigna. The three women confirmed that a verdict of guilty of violation of Section 245(a)...was not their intended verdict, but that they mistakenly thought they voted on the lesser included offense of violation of Section 240.... They advised me that they would be glad to sign affidavits to that effect. [¶] Declarant also spoke to James Vigna regarding the verdict on Count V.... He stated that he thought he voted for a misdemeanor but that he was unwilling to sign an affidavit because he no longer had his notes on the trial...."

Also accompanying the motion were declarations from three jurors, Ubungen, Larkin, and McClain. Each declaration was identical in format, and asserted: "I,..., say that: [¶] I was juror number...in the trial of the above-entitled action. On Friday, May 1, 1979, the jury

reached a verdict of guilty in Count V of the Information, a violation of Section 245(a) of the Penal Code. It was my belief at the time of signing of the verdict that I was voting on the lesser included offense, simple assault, a violation of Section 240 of the Penal Code, a misdemeanor and not a violation of Section 245(a), a felony. It was not my intention to vote guilty on a violation of Section 245(a) of the Penal Code and it at no time was my decision in this case. The only verdict of guilty intended by me was violation of Section 240 of the California Penal Code, a misdemeanor, and my vote in favor of violation of Section 245(a) of the Penal Code, a felony, was definitely a mistake. [¶] I declare under penalty of perjury that the foregoing is true and correct. [¶] Dated this...day of May, 1979, at San Francisco, California."

The motion was heard June 5, 1979, at which time the court granted a motion by the People to strike the declarations and denied Hall's motion for new trial. This appeal followed.

*Discussion*

Penal Code section 1181 specifies certain grounds upon which a court may grant a new trial. These include: "When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented" (§ 1181, subd. 3); and "When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors" (§ 1181, subd. 4). While section 1181 purports to state the "only" grounds upon which a new trial may be granted, the courts have recognized that "new trials are frequently granted on nonstatutory grounds where the failure so to do would result in a denial of a fair trial to a defendant in a criminal case." (*People* v. *Davis* (1973) 31 Cal.App.3d 106, 109 [106 Cal.Rptr. 897].) "The power to grant a new trial on such nonstatutory grounds obviously is derived from the trial court's constitutional duty to insure an accused a fair trial." (*Id.*, at p. 110.) Appellant argues that the affidavits submitted to the trial court establish grounds for a new trial under both subdivisions 3 and 4 of section 1181, or in the alternative that they establish grounds for a new trial on the basis of the due process clause of the federal Constitution and article I, sections 15 and 16 of the California Constitution.

Related to appellant's contention are the evidentiary rules which have developed around the proposition that jurors cannot impeach their ver-

dicts. Prior to *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal. Rptr. 196, 455 P.2d 132], that proposition, though subject to judicially created exceptions, was considered to have statutory foundation (e.g., *People* v. *Gidney* (1937) 10 Cal.2d 138, 146 [73 P.2d 1186]), and to be "necessary to prevent instability of verdicts, fraud, and harassment of jurors" (*Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 773 [329 P.2d 897]). In *Hutchinson*, however, Chief Justice Traynor in a scholarly opinion for a unanimous court rejected both propositions. It declared that the "rule owes its continuing vitality, not to statute, but to the force of stare decisis [citations] and to a variety of legal arguments and public policies that, like the discredited policy against self-stultifying testimony, cannot withstand careful analysis." (71 Cal.2d at p. 348.)

In modification of the older common law rule, the court in *Hutchinson* adopted the distinction which is reflected in Evidence Code section 1150, subdivision (a): "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." The court noted that "[t]his distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved, has been advocated by commentators [citations], adopted by the Uniform Rules of Evidence (rules 41 and 44) and the Model Code of Evidence (rule 301), and has been the basic limitation on proof set by the leading decisions allowing jurors to impeach their verdicts. [Citations.] [¶] Although section 1150 does not alter the rule against impeachment of a verdict by the jurors, its limitation of impeachment evidence to proof of overt conduct, conditions, events, and statements, as suggested by the commentators, vitiates the major policy arguments supporting the common law rule. [Citation.] This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration." (71 Cal.2d at pp. 349-350.) Reasoning that admission of jurors' affidavits within the limits set by section 1150 "protects

the stability of verdicts, and allows proof by the best evidence of misconduct on the part of either jurors or third parties that should be exposed, misconduct upon which no verdict should be based" (71 Cal.2d at p. 350), the court concluded that "jurors are competent witnesses to prove objective facts to impeach a verdict under section 1150 of the Evidence Code" (71 Cal.2d at p. 351).

■  Appellant contends that the affidavits of the three jurors were admissible under *Hutchinson* because introduced for the purpose of showing, not the *effect* of misconduct upon the subjective thought processes of the jurors (which, under appellant's theory, is reflected in the verdict) but rather the fact of misconduct itself. In other words, it is appellant's theory that a *mistake* on the part of jurors constitutes misconduct which can be evidenced by the affidavits of the jurors themselves.

While appellant deserves considerable credit for ingenuity, his argument would undermine the thrust of *Hutchinson.* Even assuming for purposes of analysis that a mistake on the part of jurors could under some circumstances constitute "misconduct" within the meaning of Penal Code section 1181, subdivision 3, or otherwise constitute grounds for granting a new trial on the basis of section 1181, subdivision 4 or on the basis of general considerations of fairness (cf. *People* v. *Davis, supra,* 31 Cal.App.3d 106),[2] the reasons articulated in *Hutchinson* for

---

[2]Some states permit an apparent verdict to be impeached by evidence of a mistake in *communication* of the jury's findings (e.g., *Rose* v. *Thau* (1974) 45 App.Div.2d 182 [357 N.Y.S.2d 201, 203-204]; *P. M. Lattner Mfg. Co.* v. *Higgins* (1923) 196 Iowa 920 [195 N.W. 746, 747], and cases cited in Annot., 18 A.L.R.3d 1132, §§ 3, 4, 8, 9, 12, 14) on the theory that the jurors are not attempting "'to reverse their action in the jury room but to establish it.'" (*Rose* v. *Thau, supra,* at p. 204.) And under some circumstances courts have permitted evidence to show that the verdict was incorrectly recorded because it was never agreed to by the required number of jurors. (E.g., *Mattice* v. *Maryland Casualty Co.* (W.D.Wash. 1925) 5 F.2d 233, 234; *Spielter* v. *North German Lloyd S. S. Co.* (1931) 232 App.Div. 104 [249 N.Y.S. 358]; *Routhier* v. *City of Detroit* (1953) 338 Mich. 449 [61 N.W.2d 593, 40 A.L.R.2d 1114]; but cf. *Metz* v. *City of Bridgman* (1963) 341 Mich. 586 [124 N.W.2d 741] [precluding retraction of assent]; *People* v. *Rushin* (1971) 37 Mich.App. 391 [194 N.W.2d 718, 721-722] [holding that in criminal cases "[o]nce the jury has been officially discharged and left the courtroom...it is error to recall it in order to alter, amend or impeach a verdict"]. Compare *Castro* v. *Gill* (1855) 5 Cal. 40, 42 [rejecting affidavits of four jurors who asserted that the verdict as recorded was not that agreed upon by the jury]; *Johnston* v. *Long* (1947) 30 Cal.2d 54 [181 P.2d 645] [rejecting affidavits that jury understood its verdict to be against the defendant only in his representative capacity]; see also *Telles* v. *Title Ins. & Trust Co.* (1969) 3 Cal.App.3d 179, 185-187 [83 Cal.Rptr. 444]; *Fernandez* v. *Consolidated Fisheries, Inc.* (1953) 117 Cal.App.2d 254, 262-263 [255 P.2d 863].)

precluding attack on a verdict through "proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved" (71 Cal.2d at p. 349) appear equally applicable whether such proof is offered to show the effect of external conduct upon the mental processes of the juror or to show the mental processes of the juror as an independent ground for overturning the verdict. "Affidavits of jurors may be used to impeach their verdict only in certain limited situations. Such affidavits may be used to show that the verdict was reached by lot or chance and to show that one or more of the jurors concealed bias or prejudice on *voir dire*. [Citation.] They may also be used to impeach a verdict under the circumstances provided for in section 1150 of the Evidence Code." (*Putensen v. Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062, 1082 [91 Cal.Rptr. 319].) Thus, the rule against impeachment of verdicts by jurors does not preclude juror affidavits to prove that certain statements were made to the jury by a bailiff (*People v. Hutchinson, supra*, 71 Cal.2d 342, 351; *People v. Lee* (1974) 38 Cal.App.3d 749, 754 [113 Cal.Rptr. 641]), or by the judge (*Putensen v. Clay Adams, Inc., supra*), or by other jurors (*People v. Neely* (1979) 95 Cal.App.3d 1011, 1018, 1020 [157 Cal.Rptr. 531]); nor does it preclude juror affidavits to show that certain statements were *not* made (*People v. Pierce* (1979) 24 Cal.3d 199, 208 [155 Cal.Rptr. 657, 595 P.2d 91]), or to show discussions among jurors (*Krouse v. Graham* (1977) 19 Cal.3d 59, 80 [137 Cal.Rptr. 863, 562 P.2d 1022]; cf. *Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98 [95 Cal. Rptr. 516, 485 P.2d 1132]), or to show the conduct of a juror in purporting to depict the defendant's actions through reenactment (*People v. Cooper* (1979) 95 Cal.App.3d 844, 853-854 [157 Cal.Rptr. 348]). The courts have been firm, however, in precluding affidavits which do no more than characterize the affiant's own state of mind (e.g., *People v. Stevenson* (1970) 4 Cal.App.3d 443, 445 [84 Cal.Rptr. 349]) or the state of mind of other members of the jury (e.g., *People v. Pierce, supra; Putensen v. Clay Adams, Inc., supra*, at p. 1083; *Continental Dairy Equip. Co. v. Lawrence* (1971) 17 Cal.App.3d 378, 387 [94 Cal. Rptr. 887]; cf. *Silverhart v. Mount Zion Hospital* (1971) 20 Cal.App. 3d 1022, 1030 [98 Cal.Rptr. 187, 54 A.L.R.3d 250]; *People v. Flores* (1979) 92 Cal.App.3d 461, 468 [154 Cal.Rptr. 851]).

The declarations which appellant sought to introduce simply asserted, in identical language, each juror's belief and intent at the time he or she signed the verdict. They made no reference to any objective events which might account for their asserted mistakes, much less to any objective evidence of misconduct. In short, they presented no admissible

evidence of jury misconduct, or decision by means other than a fair expression of opinion on the part of all the jurors, or of denial of a fair trial. We conclude that the trial court did not err in granting a motion to strike the declarations, and in denying the motion for a new trial.

Appellant spent time in presentence custody for which conduct credit appears due under *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874]. Pursuant to that opinion as modified, appellant's claim for conduct credit will be referred to the Department of Corrections for appropriate action. In all other respects, the judgment is affirmed.

Elkington, Acting P. J., and Newsom, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1980.